IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRANDON L. GILLESPIE,

        Petitioner,

   v.

JERI TAYLOR,

        Respondent.

Case No. 2:14-cv-00062-JE

FINDINGS AND RECOMMENDATION

   Anthony D. Bornstein, Assistant Federal Public Defender
   101 S.W. Main Street, Suite 1700
   Portland, Oregon 97204

      Attorney for Petitioner

   Ellen F. Rosenblum, Attorney General
   Kristen E. Boyd, Assistant Attorney General
   Department of Justice
   1162 Court Street NE
   Salem, Oregon 97310

      Attorneys for Respondent

 1 – FINDINGS AND RECOMMENDATION

JELDERKS, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for Robbery, Attempted Assault, Attempted Aggravated Murder, and Felon in Possession of a Weapon. For the reasons that follow, the Petition for Writ of Habeas Corpus (#1) should be granted.

## BACKGROUND

On July 9, 2007, petitioner entered the Purple Parrot, a bar in Medford. He had a shirt covering his face, a towel wrapped around his waist, and a TEC-9 semi-automatic pistol in his hand. Petitioner pointed his gun at the barkeeper and a patron of the bar. Just then, another patron, Keith Kuropat, entered the Purple Parrot unaware there was a robbery in progress. When Kuropat saw petitioner holding the gun, he stopped, and petitioner told him to "[g]et over here mother fucker[.]" Trial Transcript, p. 68. Kuropat turned and fled, and petitioner pursued Kuropat while attempting to shoot him, but the gun initially failed to fire. *Id* at 68-69.

Petitioner followed Kuropat down the street, repeatedly yelling at Kuropat to "[g]et back here, mother fucker." *Id* at 69. By this time, the gun was working and petitioner fired at Kuropat at least six times. *Id* at 128. Although petitioner testified that he fired the shots up into the air "away from everything," Kuropat testified that he could hear the bullets ricocheting off the buildings on his

2 - FINDINGS AND RECOMMENDATION

right side. *Id* at 72, 76, 265. A forensic technician determined that the bullets had been fired in Kuropat's direction, and lodged in buildings along the street after ricocheting off of the roadway. *Id* at 144-166. None of the shots struck Kuropat, and he was able to escape unharmed.

Sean Barnett was walking home after a night of drinking when he heard the gunshots petitioner had fired at Kuropat, but Barnett thought they were just firecrackers and that petitioner was simply running away after lighting them. *Id* at 79. However, petitioner approached Barnett, pointed the gun at his head, and told Barnett, "Down, down. Get the fuck down." *Id* at 80-81. Barnett began to raise his hands "as slowly as possible" because he "was stalling for time, trying to figure out . . . how to get out of it." *Id*. Barnett, who was intoxicated, remembered talking to petitioner but could not remember what was said. He was unable to remember anything from the time he began raising his hands until he ran away. *Id*.

Between the time Barnett began raising his hands and the time he ran away, petitioner fired his weapon a single time. Petitioner claimed that he only had his gun pointed down during the encounter, and when petitioner did not comply with his instructions to get on the ground, he "fired a round off away from him into the pavement." *Id* at 300. Petitioner estimated he was standing approximately five feet away from Barnett, and that he fired the shot eight or nine feet

3 – FINDINGS AND RECOMMENDATION

away from Barnett down into the gutter portion of the sidewalk Barnett was standing on. *Id* at 300, 301. He testified that he did not intend to shoot Barnett. *Id* at 303. According to petitioner, when he fired the shot, Barnett did not react at all – it was "as if nothing happened at all." *Id* at 301. Barnett had no recollection of a shot being fired. Respondent's Exhibit 104, p. 82. He only remembered petitioner running away from him, at which point he began running away from petitioner. *Id* at 83.

Police arrested petitioner several weeks after the events described above, and petitioner confessed to his participation in the crimes including shooting at Kuropat and "firing a round at the ground" with respect to Barnett. *Id* at 255-256. As a result, the Jackson County Grand Jury indicted petitioner on two counts of Robbery in the First Degree, two counts of Attempted Assault in the First Degree, three counts of Kidnapping in the Second Degree, one count of Attempted Aggravated Murder, and one count of Felon in Possession of a Firearm. Respondent's Exhibit 102.

Before proceeding to trial, petitioner elected to plead guilty to Felon in Possession of a Firearm. Thereafter he proceeded to a jury trial where, at the close of the State's case, he moved for a judgment of acquittal as follows:

> With respect to Mr. Barnett, the Attempted Assault Count, the same – it is the same analysis – well the shot fired in his vicinity. The question comes, of

4 – FINDINGS AND RECOMMENDATION

>     course, does that arise to the level of an Attempted
>     Assault?  Again, Your Honor has heard the evidence
>     so far.  Mr. Barnett does not even recall a shot being
>     fired.  Obviously, he was intoxicated.  There is
>     obviously evidence that there was a shot fired, and
>     it was in the vicinity of Mr. Barnett.  The same
>     analysis again, I will leave it to Your Honor.  We
>     think the evidence is insufficient.

Respondent's Exhibit 105, pp. 270-271.  The trial court denied the motion, finding that a reasonable jury could find petitioner guilty. *Id* at 275.

At the conclusion of the trial, the jury found petitioner guilty of two counts of Robbery in the First Degree, two counts of Attempted Assault in the First Degree, and one count of Attempted Aggravated Murder.  *Id* at 396-397.  The jury acquitted petitioner of the Kidnapping charges.  *Id* at 397.  The trial court sentenced petitioner to a total of 335 months in prison.

Petitioner took a direct appeal, but the Oregon Court of Appeals affirmed the trial court's decision without opinion, and the Oregon Supreme Court denied review.  *State v. Gillespie*, 227 Or. App. 642, 206 P.3d 1222, *rev. denied*, 347 Or. 446, 223 P.3d 1054 (2009).

Petitioner next filed for post-conviction relief ("PCR") in Umatilla County where the PCR trial court granted the State's summary judgment motion and dismissed the case with prejudice.  Respondent's Exhibit 128.  The Oregon Court of Appeals affirmed that decision without a written opinion, and the Oregon Supreme Court denied

5 – FINDINGS AND RECOMMENDATION

review. *Gillespie v. Franke*, 256 Or. App. 760, 302 P.3d 1218, *rev. denied*, 353 Or. 867, 306 P.3d 639 (2013).

Petitioner filed this 28 U.S.C. § 2254 habeas corpus case on January 13, 2014. In his Petition for Writ of Habeas Corpus, petitioner raises four grounds for relief:

> **GROUND ONE**: Ineffective assistance of trial counsel.
> **SUPPORTING FACTS**: My trial counsel failed to give a closing argument that explained to the jury that I did not shoot at my (victim), Kuropat. And also that I did not shoot at my other (victim), Barnett. He did not show the evidence from the video and the ballistics report to the jury or judge.
>
> **GROUND TWO:** Trial court erred in not informing the jury to come to a verdict of 12 concurring members (non-unanimous verdicts on all counts).
> **SUPPORTING FACTS:** The judge did not inform the jury to vote on the counts unanimously, but he told them that they could come to a verdict of 10-2 for guilty.
>
> **GROUND THREE**: Trial court erred in not acquitting me on Attempted Aggravated Murder and Attempt to commit a Class A felony.
> **SUPPORTING FACTS:** I did not attempt to kill or maim either of the victims I was convicted of. The evidence shows that I did not try to kill or hurt anyone.
>
> **GROUND FOUR:** Trial court erred in not allowing objection to consecutive Measure 11 sentencing by judge.
> **SUPPORTING FACTS:** Trial counsel objected to Measure 11, and consecutive sentences in trial. I am being held illegally for Measure 11 sentence on Attempted Aggravated Murder and Attempted Assault I. Petition, at 6-7.

6 – FINDINGS AND RECOMMENDATION

Petition for Writ of Habeas Corpus (#1), pp. 6-7 (corrected for spelling).

Respondent asks the court to deny relief on the Petition because: (1) petitioner failed to fairly present the federal claims within Grounds Two, Three, and Four to Oregon's state courts, leaving them procedurally defaulted; (2) insofar as petitioner presented federal claims to the state courts, the resulting decisions were neither contrary to, nor unreasonable applications of, clearly established federal law; and (3) all of petitioner's claims lack merit.

## DISCUSSION

### I. Unargued Claims

As previously noted, petitioner raises four grounds for relief in his Petition. In his supporting memorandum, however, petitioner chooses to brief only the portion of Ground Three which challenges his conviction for Attempted Assault as to Barnett. Petitioner does not argue the merits of his remaining claims, nor does he address any of respondent's arguments as to why relief on these claims should be denied. As such, petitioner has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims). Even if petitioner had briefed the merits of these claims, the court has examined them based upon the existing record

7 – FINDINGS AND RECOMMENDATION

and determined that they do not entitle him to relief. Habeas counsel wisely chose to focus on the claim with substance.

## II. Ground Three: Motion for Judgment of Acquittal

### A. Exhaustion and Procedural Default

As Ground Three, petitioner alleges his Attempted Assault I conviction violates due process because the State failed to present sufficient evidence that he intended to cause Barnett serious injury, or that he took a substantial step toward doing so. Respondent contends that the court is barred from considering this claim because petitioner failed to fairly present it to Oregon's state courts as a federal claim.

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore,* 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims

were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In this case, there is no dispute that petitioner appealed the trial court's denial of his motion for judgment of acquittal as to the Assault I conviction pertaining to Barnett. Indeed, petitioner presented this claim to both the Oregon Court of Appeals and the Oregon Supreme Court. Respondent's Exhibit 106, pp. 9-13; Respondent's Exhibit 108, p. 6. Respondent contends, however, that when petitioner failed to make any reference to federal law, he failed

9 - FINDINGS AND RECOMMENDATION

to fairly present his federal due process issue alleged in Ground Three.

"The law of [the Ninth Circuit] is plainly that a federal claim has not been exhausted in state court unless petitioner both raised the claim in state court and explicitly indicated then that the claim was a *federal* one. . . ." *Lyons v. Crawford,* 232 F.3d 666, 669 (9th Cir. 2000) *as modified by* 247 F.3d 904 (9th Cir. 2001) (italics in original); *see also Reese v. Baldwin*, 541 U.S. 27, 32 (2004) (requiring a litigant to indicate the federal nature of his claim at each level of his state court proceedings). "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). The Supreme Court has determined that "mere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. 364, 366 (1995).

While the Supreme Court has held that a "mere similarity" of claims is not sufficient to fairly present a federal claim, neither it nor the Ninth Circuit has reached a determination on whether a petitioner fairly presents a federal claim where he bases it solely upon state law, but the standard used by the state courts is exactly the same as the federal standard. This is the critical inquiry in this case because respondent does not dispute that the Oregon courts

10 – FINDINGS AND RECOMMENDATION

utilize the federal *Jackson* standard when analyzing insufficiency of the evidence claims.

The existing decisions on this question are mixed. In *Lacy v. Belleque*, 2010 WL 3866719 (D. Or. Sept. 21, 2010), Judge Aiken determined that where the petitioner had the benefit of appointed counsel in his state proceedings and failed to specifically denote the federal nature of his claim, he failed to fairly present it:

> While Oregon has, in fact, adopted the identical standard as *Jackson* to determine sufficiency of the evidence, it has done so in its application of review of sufficiency of evidence claims that arise under state law. Petitioner appealed claims of insufficiency of the evidence in Oregon state courts, citing Oregon statutes and Oregon case law. Such claims do not automatically alert the state courts to a federal claim of due process violation on the same grounds. . . .

*Id* at 3.

In *Price v. Nooth*, 2009 WL 188595 (D. Or. Jan. 23, 2009) Judge Mosman reached the same conclusion on this issue. However, as Judge Marsh noted when reaching the opposite conclusion in *Wieland v. Thompson,* 2013 WL 550504 (D. Or. Feb. 12, 2013) district courts within the Ninth Circuit have reached different outcomes when addressing this issue. In addition, as petitioner notes, a number of appellate courts have concluded that a habeas petitioner fairly presented a sufficiency of the evidence issue while only referencing state law

where the state and federal standards are identical. Memo in Support (#41), pp. 12-13 (citing cases).

The exhaustion doctrine is designed "to avoid the unnecessary friction between the federal and state court systems that would result if a lower federal court upset a state court conviction without first giving the state court system an opportunity to correct its own constitutional errors." *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973). I do not believe it serves the purposes of exhaustion to eliminate from consideration a sufficiency of the evidence claim that the petitioner in this case presented to the state courts for their consideration using a standard completely identical to that utilized by the U.S. Supreme Court. Accordingly, although petitioner failed to explicitly refer to federal law in his state court proceedings, the court should conclude that petitioner nevertheless fairly presented his sufficiency of the evidence claim so as to preserve it for federal habeas corpus review.

    B.    **The Merits**

        1.    **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable

12 - FINDINGS AND RECOMMENDATION

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

### 2. Analysis

When reviewing a habeas corpus claim based on insufficient evidence, "[t]he relevant question is whether, after viewing the

13 - FINDINGS AND RECOMMENDATION

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)(emphasis in original).  When the record supports conflicting inferences, courts must presume the jury resolved the conflicts in favor of the prosecution.  *Id* at 326.  Because this issue occurs in the habeas corpus context which carries with it a stringent standard of review, this court is required to apply a "double dose of deference" to the state court decision, a level of deference "that can rarely be surmounted."  *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011).

Oregon law provides that a person commits the crime of Assault in the First Degree if he intentionally causes serious physical injury to another by means of a deadly or dangerous weapon.  ORS §163.185(1)(a).  A person is guilty of attempting to commit a crime in Oregon only where he "intentionally engages in conduct which constitutes a substantial step toward commission of the crime."  ORS § 163.405(1).  His conduct is "intentional" if he acts "with a conscious objective to cause the result or to engage in the conduct so described."  ORS § 161.085(7).

According to petitioner, his own testimony constituted the only evidence of his intent with respect to the shooting involving Barnett.  Where he testified that he was not attempting to shoot

14 – FINDINGS AND RECOMMENDATION

Barnett, and intentionally aimed the pistol to the side such that the bullet missed Barnett by eight to nine feet while petitioner was standing only five feet away from his victim, he concludes that the trial court erred when it did not grant his motion for judgment of acquittal. He further contends that even if the jury did not believe his testimony, any such disbelief did not constitute affirmative evidence of his intent to shoot Barnett upon which it could have convicted him.

The State disagrees, and posits that the trial court properly denied the motion for judgment of acquittal because a rational jury could conclude that petitioner attempted to inflict serious injury on Barnett where: (1) petitioner clearly attempted to shoot Kuropat, and lied about it when he testified that he simply fired his gun up into the air; (2) like the Kuropat shooting, petitioner was attempting to obtain Barnett's compliance by firing his weapon, and an inference can be drawn that, as with Kuropat, he did not miss intentionally; (3) prior to firing the gun, he had pointed it at Barnett's head; and (4) he told the police he fired off a round during the Barnett confrontation because he was "so fucking pissed off" such that a jury could conclude that he took a substantial step toward inflicting serious physical injury. Trial Transcript, p. 256.

There was no dispute petitioner fired a shot in the vicinity of Barnett. Petitioner's own testimony and the recovered casing

15 – FINDINGS AND RECOMMENDATION

provided clear evidence of this. But there was no evidence that petitioner actually intended to harm Barnett. The weapon petitioner used in committing his crimes had a 30-round magazine. The weapon was recovered with the magazine and 16 rounds of live ammunition. The evidence established only that: (1) petitioner was standing approximately five feet away from Barnett at the time he discharged his weapon; (2) Barnett stood still throughout the encounter; (3) petitioner fired a single shot that did not strike Barnett; and (4) petitioner, not Barnett, was the first to flee. If petitioner had wanted to injure Barnett, he would have fired more than a single shot, and he would not have fled from an immobile Barnett while his firearm's magazine still contained 16 rounds. In this respect, any inference drawn from this evidence leads only to the conclusion that petitioner was not attempting to shoot Barnett. Consequently, the trial court should have granted petitioner's motion for judgment of acquittal as to the Assault I charge pertaining to Barnett.

The question nevertheless remains whether habeas corpus relief is warranted where the court lends a "double dose" of deference to the state court decision denying relief on this claim. It is important to note that the Oregon standard for reviewing the denial of a motion for judgment of acquittal is simply a mirror of the *Jackson* standard: "whether, viewing the evidence in the light most favorable to the state, any rational trier of fact could have found that the

16 – FINDINGS AND RECOMMENDATION

essential elements of the crime had been proved beyond a reasonable doubt." *State v. Paragon*, 195 Or. App. 265, 267, 97 P.3d 631 (2004). In this respect, the *Jackson* inquiry is already resolved with the conclusion that the trial judge should have allowed the motion for judgment of acquittal, thereby leaving only a single layer of deference, namely that of 28 U.S.C. § 2244(d). Where the record is simply devoid of any evidence from which a reasonable juror could conclude that petitioner attempted to seriously injure Barnett with his firearm, the trial court's decision denying petitioner's motion for a judgment of acquittal amounted to an unreasonable application of the *Jackson* standard.

## RECOMMENDATION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#1) should be granted, petitioner's conviction for Attempted Assault in the First Degree as to Sean Barnett (Count Four of the Indictment) should be vacated, and respondent should be ordered to recalculate petitioner's sentence in accordance with the court's opinion.

## SCHEDULING ORDER

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due within 17 days. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

17 - FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this <u>17th</u> day of December, 2015.

                                            /s/John Jelderks
                                                John Jelderks
                                                United States Magistrate Judge